## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **FEINTOOL EQUIPMENT CORPORATION** | : | Case No. _____ |
| 6833 Creek Road | : | |
| Cincinnati, Ohio 45242, | : | Judge_____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **COMPLAINT** |
| **UPS FREIGHT** | : | |
| P.O. Box 1216 | : | |
| Richmond, Virginia 23218, | : | |
| | : | |
| *Serve also:* | : | |
| UPS GROUND FREIGHT, INC., | : | |
| Registered Agent | : | |
| 1000 Semmes Avenue | : | |
| Richmond, Virginia 23224, | : | |
| | : | |
| Defendant. | : | |

Plaintiff Feintool Equipment Corporation states as follows for its Complaint against defendant UPS Freight:

### PARTIES AND JURISDICTION

1. Plaintiff Feintool Equipment Corporation ("Feintool") is an Ohio corporation with its principal place of business located at 6833 Creek Road, Cincinnati, Hamilton County, Ohio.

2. By information and belief, defendant UPS Freight ("UPS") is a Virginia Corporation which is authorized to conduct business within the state of Ohio.

3. This claim involves loss and/or damage to goods transported in interstate commerce, and involves the application and interpretations of federal law, namely the Carmack Amendment, 49 U.S.C. §§ 14706, *et seq*.

4. As such, this court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## BACKGROUND FACTS

5. Feintool incorporates Paragraphs 1 through 4 of its Complaint as if fully rewritten herein.

6. Feintool is in the business of providing mechanical or hydraulic blanking and punching processes, as well as cold forming processes to produce aluminum, and standard or high-tensile steel machinery parts and tools, for use in commercial and industrial applications.

7. Smith & Wesson, Inc. engaged Feintool to manufacture certain machinery parts and components to rebuild Smith & Wesson's metal stamping press, located at 19 Aviation Drive, Houlton, Maine 04730.

8. Feintool manufactured 109 machinery parts or components for Smith & Wesson at its processing plant which is located in Switzerland (collectively "the Parts"). (*See* Exhibit A, Freight Packing List).

9. Feintool had the Parts shipped from Switzerland to its Cincinnati headquarters, located at 6833 Creek Road, Cincinnati, Hamilton County, Ohio.

10. The Parts were inspected in Cincinnati, Ohio by Chris Taylor ("Taylor"), a product manager for Feintool, and were then re-packaged for shipment to Smith & Wesson, located at 19 Aviation Drive, Houlton, Maine 04730.

11. On or about, July 22, 2016, Feintool engaged defendant UPS to transport the Parts from Feintool's Cincinnati, Ohio location to Smith & Wesson. (*See* Exhibit B, Bill of Lading).

12. By information and belief, UPS holds motor carrier operating authority from the Federal Motor Carrier Safety Administration ("FMCSA") to engage in transportation as a for-hire carrier of property under Bills of Lading with shippers and receivers.

13. The Parts were delivered to UPS in good condition.

14. The Parts were ultimately delivered to Smith and Wesson by UPS on July 28, 2016. (*See* Exhibit B).

15. Together with the Parts, Feintool also utilized UPS to ship two (2) tool boxes to Smith & Wesson.

16. The tools within these boxes were to be used by Feintool and Smith & Wesson for disassembly of Smith & Wesson's old metal stamping press.

17. The tool boxes were also delivered to Smith & Wesson on July 28, 2016.

18. During all times relevant to this Complaint, Taylor was on-site at Smith & Wesson to assist with the disassembly and reassembly of the metal stamping press.

19. When the Parts were delivered to Smith & Wesson, its Mechanic, Allen Boutilier ("Boutilier"), signed the Bill of Lading without notating any loss or damage.

20. On July 28, 2016, when signing the Bill of Lading, Boutilier focused his attention on the tool boxes, as those were needed immediately for the disassembly of the old metal stamping press.

21. From July 28, 2016 through July 30, 2016, the shipping container containing the Parts was stored in Smith & Wesson's work area, which is an area isolated from any areas within of Smith & Wesson's plant where liquids, chemicals, or other rust-inducing agents are stored.

22. On July 30, 2016, after completing the disassembly of the old metal stamping press, Taylor and Boutilier opened the shipping container to access the Parts.

23. On July 30, 2016, when the shipping container was opened, Taylor and Boutilier immediately noticed a green liquid covering most of the Parts. (*See* photographs of the Parts, attached hereto at Exhibit C).

24. The Parts were exposed to certain liquids or chemicals while in transit by UPS and

were damaged upon delivery to Smith & Wesson.

25. A majority of the Parts were rusted and deteriorated beyond repair or salvage and had to be remanufactured by Feintool on an expedited basis.

26. The Parts which were rusted and deteriorated were rejected by Smith & Wesson.

27. Feintool was able to clean and salvage $20,509.40 worth of Parts.

28. Feintool remanufactured the damaged parts and had them delivered to Smith and Wesson.

29. Feintool incurred additional shipping charges of $8,083.86 for the delivery of the remanufactured parts to Smith & Wesson ("the Additional Shipping Expense").

30. The manufacturing of the replacement parts and their shipping were done on an expedited basis to avoid significant downtime at Smith & Wesson.

31. Feintool would not have incurred the Additional Shipping Expense had the Parts been delivered to Smith & Wesson in good condition on July 28, 2016.

32. To assist with the rebuild of the stamping press, Taylor subsequently returned to Smith & Wesson when the replacement parts were delivered, which resulted in $5,976.90 in additional cost to Feintool ("the Additional Travel Expense").

33. Feintool would not have incurred the Additional Travel Expense had the Parts been delivered to Smith & Wesson in good condition on July 28, 2016.

34. On August 1, 2016, Feintool began preparing its Cargo Loss & Damage Claim to UPS for $47,357.60 ("the August 1, 2016 Claim"). (*See* August 1, 2016 Claim, attached hereto as Exhibit D).

35. Feintool initially elected to forego recovery of the original freight charges incurred in the shipment of the Parts, which totaled a $4,145.20 expense; however, that amount is a recoverable loss. (*See* Exhibit D).

36. On August 2, 2017 UPS rejected Feintool's August 1, 2016 Claim. (*See* August 2, 2017 correspondence from R. Moses, UPS Claims Investigator, attached hereto as Exhibit E).

37. In an effort to compromise in its claim, on September 7, 2017, Feintool submitted a revised claim to UPS in the amount of $40,161.84, wherein Feintool voluntarily, and in the interests of compromise, elected to forego recovery of the Additional Shipping Expense and the Additional Travel Expense. (*See* September 7, 2017 Claim, attached hereto as Exhibit F).

38. UPS rejected Feintool's September 7, 2017 Claim on September 12, 2017. (*See* September 12, 2017 Email from R. Moses, UPS Claims Investigator, attached hereto as Exhibit G).

39. The Parts were tendered to UPS in good condition; the Parts were subsequently delivered in a damaged condition; and Feintool has suffered $54,222.91, plus freight charges ("the Loss"), in damages as a result.

40. Despite demands for payment of the Loss, and modification of its claim amounts, UPS has denied Feintool's claims.

**Count I: Violations of the Carmack Amendment, 49 U.S.C. §§ 14706, *et seq*.**

41. Feintool incorporates Paragraphs 1 through 40 of its Complaint as if fully rewritten herein.

42. UPS is engaged in the cargo shipping business.

43. UPS is permitted to enter into Bills of Lading with shippers and receivers.

44. The Parts were tendered to UPS in good condition. (*See* Exhibit B, Bill of Lading).

45. UPS unquestionably took possession and control of the Parts.

46. When the Parts arrived at their destination, and were inspected, most them were rejected by the consignee because they had been exposed to liquids, chemicals, or some other rust-inducing agent.

47. Between delivery of the Parts on July 28, 2016, and inspection of the Parts on July

30, 2016, the Parts were stored in Smith & Wesson's work area, which is isolated from the areas of Smith & Wesson's plant where liquids, chemicals, and other rust-inducing agents are stored.

48. As such, the Parts were damaged while in transit by UPS from Feintool's Cincinnati, Ohio location, to Smith & Wesson's Maine location.

49. The Parts were in damaged condition at the time of delivery.

50. Pursuant to 49 U.S.C. § 14706, UPS is liable to Feintool for all loss or damage to the Parts while in UPS' care, custody, and control.

51. Feintool has suffered $54,222.91, plus freight charges, in damages, and UPS is liable to Feintool for this amount.

WHEREFORE, plaintiff Feintool Equipment Corporation demands all of the following relief:

i. Judgment on Count I of its Complaint against UPS in the amount of $54,222.91;

ii. An award of plaintiff's attorney's fees and costs incurred;

iii. All such other relief that the Court finds to be just and proper.

Respectfully submitted,

CORS & BASSETT, LLC

_____
James C. Kezele           (0089610)
Curtis L. Cornett         (0062116)
201 E. Fifth Street, Suite 900
Cincinnati, Ohio 45202
(513) 852-8231
Fax (513) 852-8222
Trial Attorneys for Plaintiff Feintool
Equipment Corporation